UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| EDDIE W. HARRY, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>MICHAEL J. ASTRUE, Commissioner )<br> of the Social Security Administration, )<br>)<br>Defendant.[1] ) | 1:06-cv-1313-SEB-JMS |

**Entry Discussing Complaint for Judicial Review**

Eddie W. Harry ("Harry") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **remanded** for further proceedings.

**I. BACKGROUND**

Harry applied for DIB on November 1, 2002, alleging an onset date of June 20, 2000. His application was denied initially and upon reconsideration. His request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on April 15, 2005. Harry was present, accompanied by his attorney. Medical and other records were introduced into evidence. Harry and a vocational expert testified. The ALJ denied Harry's application on February 24, 2006. On July 6, 2006, the Appeals Council denied Harry's request for review of the ALJ's decision, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d) of the *Federal Rules of Civil Procedure*, Michael J. Astrue, in his official capacity only, is the proper defendant in this action.

The ALJ's decision included the following findings: (1) Harry met the nondisability requirements of the Act and was insured for benefits through December 31, 2005; (2) Harry had not engaged in substantial gainful activity since the alleged onset of disability; (3) Harry's diabetes was considered "severe" based on the requirements in the Regulations; (4) Harry's medically determinable impairment did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (5) Harry's allegations regarding his limitations were not totally credible for the reasons set forth in the body of the ALJ's decision; (6) Harry retained the residual functional capacity ("RFC") to perform light work and he should avoid walking on slippery or uneven surfaces, should avoid work environments that require exposure to occupational hazards such as unprotected heights or dangerous moving machinery, and would require to be absent from work on average one day per month; (7) Harry was unable to perform any of his past relevant work; (8) Harry was a younger individual between the ages of 18 and 44, he had a limited tenth grade education, and his past relevant work included skills transferable to his RFC as discussed in the body of the ALJ's decision; (9) Harry had the RFC to perform a significant range of light work; and (10) although Harry's exertional limitations did not allow him to perform the full range of light work, using Medical-Vocational Rule 202.19 as a framework for decision-making, there remain a significant number of light and sedentary jobs in the Indiana economy that he could perform, including assembler (15,000 light jobs, 4,200 sedentary jobs), machine operator (6,000 light jobs, 2,100 sedentary jobs), and packer (2,400 light jobs, 1,100 sedentary jobs). With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Harry had not been under a "disability" as defined in the Act at any time through the date of the ALJ's decision.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for disability benefits, a claimant must prove he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

2

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.    Analysis

The ALJ found that Harry had a "severe" impairment of diabetes, but that he could perform light and sedentary exertional jobs which existed in significant numbers in the Indiana economy. (R. at 22). Harry alleges that the ALJ's decision is not supported by substantial evidence.

In determining Harry's RFC, the ALJ relied on the report of Dr. Kim, a consulting examining physician. (R. at 19). Harry points out that Dr. Kim's January 7, 2003, report is based on a single examination and on Harry's self-reported medical history, not on any prior medical records. (R. at 138-142). As one example of how poor of a historian Harry was, Dr. Kim noted that his blood sugar was relatively well controlled most of the time. (R. at 142). Just days before then, December 22 through 25, 2002, Harry had been hospitalized with a blood sugar level of 1290, hypertensive shock, and diabetic ketoacidosis.(R. at 168-69). Just two months prior, Harry had been hospitalized for three days in October with similar symptoms of diabetic ketoacidosis. (R. at 170). Dr. Kim notes diabetes mellitus, diabetic neuropathy and gastroesophageal reflux disease. (R. at 142). Dr. Kim does not mention Harry's problems with diabetic ketoacidosis, gastroparesis, orthostatic hypotension and chronic obstructive pulmonary disease. (R. at 165-70, 202-12). Dr. Kim ordered no diagnostic tests. The ALJ's rationale for relying on Dr. Kim's report in determining his RFC assessment is not supported by substantial evidence.[2]

The ALJ also stated, "I afford great weight to the treating physician's opinion regarding the claimant's ability to work," but this is in reference to the ALJ's notation that "Dr. Kapoor, a treating physician, opined as early as July 2003 that the claimant essentially did not qualify for disability." (R. at 16 and 18, citing R. at 150). This is a misstatement of the record by the ALJ, one he relies on heavily. (R. at 16 and 18). The report at page 150 is "Pt. wants to know why you filled out sheet to get disability the way you did. Pt. does not qualify for disability and wants to come in Mon P.M. to talk to you at 1:45." The "sheet" Dr.

---

[2]The ALJ also relied on the State Agency physician opinion of January 31, 2003, but this is duplicative because the State Agency report relies entirely on Dr. Kim's report, (R. at 131), and indicates that there was no treating source statement in the file. (R. at 136).

3

Kapoor allegedly filled out is not part of the record. Nor did Dr. Kapoor state in his notes that Harry did not qualify. As is often the case, even if Dr. Kapoor had opined that Harry was disabled, this does not mean Harry would be found disabled by the agency because the conclusion as to whether a claimant "qualifies" is not left to a treating physician.

The reliance on this non-statement is even more troubling in light of the crystal clear statement made on January 11, 2005, by treating physician Dr. Patel:

> This is to certify that Ed W. Harry is under my medical care since March 2004. He is being treated for insulin dependent diabetes mellitus, and is suffering from severe peripheral neuropathy along with autonomic neuropathy. This patient's blood glucose level has been fluctuating. He has been having frequent nausea and vomiting. In my observation of this patient the way his medical condition is so symptomatic, it will be hard for him to hold any full-time employment.
>
> This patient because of his autonomic neuropathy developing repeated episodes of persistent nausea and vomiting, develops severe dehydration and because of severe peripheral neuropathy, he has severe orthostatic hypotension and change in position makes sufficient fluctuation marked full in his blood pressure which makes him severely dizzy and becomes unsteady on his gait. Because of the two main reasons above I do not feel this gentleman can hold any full-time employment as even in a simple job. I feel he will be missing at least 7 - 10 days of work per month. This patient has diabetes retinopathy and peripheral neuropathy which has been documented by the testing. If I can be of any help, please feel free to contact my office. Thank you.

(R. at 262).

The ALJ did not mention this treating physician statement, so it is not known how, if at all, he weighed this opinion. The Commissioner's contention that this omission is a "harmless oversight" is not well-taken because Dr. Patel's opinion discusses far more than his conclusion regarding Harry's ability to work. A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2). The diagnoses discussed by Dr. Patel are well-documented as are the symptoms he describes. The same symptoms caused Harry to be hospitalized on at least four occasions in 2002, 2003, and 2004.[3] In contrast, Dr. Kim's report (and the corollary State Agency report) are not supported by medical testing or a review of records relating to Harry's October 2002 and December 2002, hospitalizations. "[T]he ALJ (not the

---

[3]Harry reported to Dr. Kapoor in April 2003, that his wife was laid off and he lost his insurance. (R. at 152). This certainly could have a bearing on the frequency with which he sought ongoing medical care.

4

Commissioner's lawyers) must build an accurate and logical bridge from the evidence" to his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). To this extent, the court cannot trace the path of the ALJ's reasoning as to his evaluation of the entire record. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (an ALJ must "sufficiently articulate his assessment of the evidence to assure us that [he] considered the important evidence . . . [and to enable] us to trace the path of [his] reasoning.") (internal quotation omitted).

Harry also correctly notes that the ALJ mischaracterized the EMG and nerve conduction study of July 20, 2004. The report concluded that there was "electrodiagnostic evidence of moderately severe mixed large fiber peripheral neuropathy." (R. at 257). The ALJ stated, three times, that the study "revealed only moderate mixed large fiber peripheral neuropathy." (R. at 17, 18). This simply and inexplicably distorts the evidence. The Commissioner's effort to rationalize the ALJ's interpretation of "severe" as "moderate" is meritless.

The ALJ's errors in interpreting and evaluating the evidence also taint his credibility determination. He relied specifically on the non-statement by Dr. Kapoor in determining Harry's credibility. (R. at 18). He also relied on his interpretation as to the severity of the EMG and nerve conduction study results. *Id.* The ALJ concluded that Harry's allegations of substantial functional limitations and severely restricted activities of daily living as a result of his combined impairments were not supported by substantial evidence in the record. (R. at 18). For the same reasons that the ALJ's RFC determination is not supported by substantial evidence, the ALJ's credibility determination cannot be affirmed.[4]

### III.  CONCLUSION

For the reasons discussed in this Entry, the ALJ's conclusion at step five of the sequential analysis is not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand). Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 08/27/2007

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[4] The court does not reach the issue of Harry's onset date because the ALJ did not find Harry disabled. *Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004) ("The ALJ did not find that Scheck was disabled, and therefore, there was no need to find an onset date. In short, SSR 83-20 does not apply."). Although there are no medical records prior to October 2002, this would not necessarily be dispositive in determining Harry's onset of disability if he is, indeed, found to be disabled. *See Lichter v. Bowen*, 814 F.2d 430, 434-46 (7th Cir. 1987); Social Security Ruling 83-20.